ENGEL, Circuit Judge.
 

 The precise issue presented by this appeal is whether Ohio’s Motor Vehicle Financial Responsibility Act, Ohio Revised Code §§ 4509.01-99 (Baldwin 1975), as it has been applied to the Duffeys, conflicts with section 525 of the Bankruptcy Act of 1978, 11 U.S.C. § 525 (1982), thereby violating the Supremacy Clause of the United States Constitution. U.S.Const. art. VI, cl. 2.
 

 Motor vehicle financial responsibility laws, which require motorists to maintain some type of automobile insurance or otherwise to furnish proof of financial responsibility, have been enacted in nearly all states.
 
 [1]
 
 Some states compel all drivers to furnish proof that they are adequately insured as a precondition to the issuance of driver’s or automobile licenses.
 
 E.g.,
 
 Mich. Comp.Laws Ann. §§ 500.3101-.3179 (1983). Other states, such as Ohio, have enacted less comprehensive laws which require proof of financial responsibility only when a driver has failed, within a reasonable time, to satisfy a judgment for damages arising from an automobile accident or has been convicted of certain serious traffic offenses.
 
 [2]
 
 The public benefit from such laws has long been recognized.
 
 See Kesler v. Department of Public Safety,
 
 369 U.S. 153, 158-68, 82 S.Ct. 807, 811-16, 7 L.Ed.2d 641 (1962). The Supreme Court has established that states may constitutionally require all motorists to carry liability insurance or post security before they are issued driver’s licenses.
 
 Bell v. Burson,
 
 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 24 L.Ed.2d 90 (1971).
 

 The validity of the Ohio statute is a matter of great concern to those interested in keeping irresponsible drivers off the highways as well as to those individuals who, voluntarily or involuntarily, go into bankruptcy. While we have been furnished no 'Ohio statistics, the general pervasiveness of the problem is well illustrated by the stipulated findings in
 
 Henry v. Heyison,
 
 4 B.R. 437 (E.D.Pa.1980). There, the court noted that in one year, 12,000 drivers in Pennsylvania had their driver’s licenses suspended as the result of unsatisfied motor vehicle tort judgments.
 
 Id.
 
 at 439 n. 4. Of those 12,000 drivers, 300 had reported that their motor vehicle tort judgments were discharged in bankruptcy proceedings.
 
 Id.
 

 This appeal is particularly important because several bankruptcy courts that have considered whether the Ohio Motor Vehicle Financial Responsibility Act unconstitutionally conflicts with federal bankruptcy laws have reached opposite conclusions.
 
 Compare In re Cerny,
 
 17 B.R. 221, 224 (Bkrtcy.
 
 *267
 
 N.D.Ohio 1982) (“[T]he [Ohio] statute is being applied nondiscriminatorily and is therefore consistent with 11 U.S.C. § 525.”)
 
 with In re Shamblin,
 
 18 B.R. 800, 803 (Bkrtcy.S.D.Ohio 1982) (“Ohio’s [statute] is discriminatory and in violation of § 525 of the Bankruptcy Code.”)
 
 and In re Duffey,
 
 13 B.R. 785, 788 (Bkrtcy.S.D.Ohio 1981) (Ohio’s financial responsibility law and policy discriminates against bankrupts and hence violates section 525 of the Bankruptcy Code). A fourth bankruptcy court in Ohio, under circumstances quite different from those involved here, found that the Ohio statute does not invariably conflict with the Bankruptcy Act.
 
 In re Hinders,
 
 22 B.R. 810 (Bkrtcy.S.D.Ohio 1982). Our decision here does not address the facts of
 
 Hinders,
 
 nor does it pass upon the merits of that case or the law expressed in it.
 

 Finally, the present controversy is significant because it involves a potential conflict between important state and federal interests: state concern for public safety and federal concern for establishing uniform bankruptcy laws. Clearly if these competing interests are incompatible, the Supremacy Clause dictates that we resolve the conflict in favor of federal law. Good policy and good sense, however, suggest the desirability of accommodating both interests if this can reasonably be achieved.
 

 I.
 

 The facts here are stipulated. On June 18, 1979, a judgment of $912.76, arising from an auto accident, was entered against George Duffey in the Municipal Court of Franklin County, Ohio. This judgment was not satisfied within 30 days and, consequently, Mr. Duffey’s operator’s license and vehicle registration were suspended on July 28, 1980, by the Registrar of Motor Vehicles, Dean Dollison, pursuant to Ohio Revised Code section 4509.37. On May 23, 1980, a judgment of $1,131.90, arising from an auto accident, was entered against Shari Duffey in the Franklin County Municipal Court. This judgment also was not satisfied within 30 days, resulting in the suspension of Mrs. Duffey’s driving privileges on October 28, 1980.
 

 The Duffeys, on January 27,1981, filed a voluntary joint bankruptcy petition under Chapter 7 of the Bankruptcy Act. A copy of their bankruptcy petition, which listed the unsatisfied accident-related judgments in the schedule of debts, was sent by the Duffeys to Registrar Dollison with the request that he reinstate their driving privileges. Dollison, while recognizing that the judgment debts were subject to discharge and that the Duffeys could not be required to satisfy or reaffirm the debt as a condition to reobtaining their licenses, nevertheless refused to vacate the order of suspension until the Duffeys had filed evidence of financial responsibility as required under Ohio Revised Code section 4509.40.
 

 On February 24, 1981, the Duffeys brought suit in bankruptcy court in the Southern District of Ohio for reinstatement of their driving privileges. In that action the Duffeys argued that Ohio’s requirement of proof of financial responsibility, as it applies to individuals whose unsatisfied tort judgments have been stayed or discharged by bankruptcy, unconstitutionally conflicts with the federal bankruptcy provision prohibiting the discriminatory treatment of bankrupts, 11 U.S.C. § 525 (1982). The bankruptcy judge agreed that the challenged provisions of the Ohio Motor Vehicle Financial Responsibility Act conflict with the Bankruptcy Act and ordered the Registrar to reinstate the Duffeys' driving privileges. The Registrar appealed this decision to the United States District Court for the Southern District of Ohio. In a carefully considered opinion, United States District Judge John D. Holschuh reversed the decision of the bankruptcy court and held that Ohio’s financial responsibility requirement does not violate section 525 of the Bankruptcy Act because the state statute applies equally to bankrupts and non-bankrupts. We affirm.
 

 II.
 

 The Supreme Court, in
 
 Perez v. Campbell,
 
 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d
 
 *268
 
 233 (1971), stated that “[d]eciding whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict.”
 
 Id.
 
 at 644, 91 S.Ct. at 1708. In making this decision a reviewing court must “determine whether a challenged state statute ‘stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’ ”
 
 Id.
 
 at 649, 91 S.Ct. at 1711 (quoting
 
 Hines v. Davidowitz,
 
 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Applying the
 
 Perez
 
 approach, we therefore first ascertain the construction of the Ohio Motor Vehicle Financial Responsibility Act and section 525 of the Bankruptcy Act, and then determine whether the statutes conflict.
 

 A.
 

 The Ohio Motor Vehicle Financial Responsibility Act
 
 [3]
 
 provides that “[wjhenever
 
 *269
 
 any person fails within thirty days to satisfy a judgment rendered within this state, upon written request of the judgment creditor or his attorney,” the court must forward a certified copy of the judgment to the registrar of motor vehicles. Ohio Rev. Code Ann. § 4509.35 (Baldwin 1975). Upon receipt of a certified copy of the unsatisfied judgment, the registrar shall “suspend the license and registration and nonresident’s operating privilege of any person against whom such judgment was rendered, except as provided in sections 4509.01 to 4509.78 of the Revised Code.” Ohio Rev.Code Ann. § 4509.37 (Baldwin 1975). Driving privileges must remain suspended for seven years; however, “[t]he registrar shall vacate the order of suspension
 
 upon proof that such judgment is stayed,
 
 or satisfied in full .-..
 
 and upon such person’s filing with the registrar of motor vehicles evidence of financial responsibility
 
 in accordance with section 4509.45 of the Revised Code.” Ohio Rev.Code Ann. § 4509.40 (Baldwin 1975) (emphasis added). Proof of financial responsibility must be maintained for three years and may be given by filing a certificate of insurance, a surety bond, a certificate of deposit, or a certificate of self-insurance. Ohio Rev.Code Ann. § 4509.45 (Baldwin 1975).
 

 The Ohio Supreme Court has not authoritatively construed the Motor Vehicle Financial Responsibility Act. Consequently, we look to lower court decisions in Ohio construing the statute, and to the language of the Act itself. It has been observed that the purpose of the Act is to “provide sanctions which would encourage owners and operators of motor vehicles on Ohio highways to obtain liability insurance sufficient in amount to protect others who might be injured through the negligent operation of a motor vehicle.”
 
 Iszczukiewicz v. Universal Underwriters Insurance Co.,
 
 182 F.Supp. 733, 735 (N.D.Ohio 1960). Following the United States Supreme Court’s decision in
 
 Perez v. Campbell,
 
 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), the former version of Ohio’s Motor Vehicle Financial Responsibility Act was declared unconstitutional to the extent that it required payment of a tort judgment as a condition to restoration of driving privileges, even though the underlying judgment was stayed, or discharged in bankruptcy.
 
 Weaver v. O’Grady,
 
 350 F.Supp. 403, 407 (S.D.Ohio 1972). The Act as it is now written cures that defect. Ohio Rev.Code Ann. § 4509.40 (Baldwin 1975). However, bankruptcy does not relieve the judgment debt- or of the requirement of posting proof of future financial responsibility.
 
 House v. O’Grady,
 
 35 Ohio Misc. 20, 299 N.E.2d 706 (Ct.C.P.Franklin County 1973).
 

 The Ohio Act has as its object the protection of the public from financially irresponsible motorists who have proved unwilling or unable to satisfy a judgment arising from an automobile accident. The statute embodies a “one-bite” approach to achieving this purpose by permitting motorists the privilege of driving without any proof of financial responsibility until they incur an accident-related judgment and fail to satisfy it within 30 days.
 

 
 *270
 
 B.
 

 Section 525 of the Bankruptcy Act of 1978 provides that:
 

 a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, s'olely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.
 

 11 U.S.C. § 525 (1982). This section has yet to be authoritatively construed by the United States Supreme Court. However, the legislative history indicates that section 525, "codifies the result of
 
 Perez v. Campbell,
 
 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), which held that a State would frustrate the Congressional policy of a fresh start for a debtor if it were permitted to refuse to renew a drivers license because a tort judgment resulting from an automobile accident had been unpaid as a result of a discharge in bankruptcy.” S.Rep. No. 989, 95th Cong., 2d Sess. 81,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5787, 5867. Therefore when construing section 525, it is helpful to examine the
 
 Perez
 
 holding.
 

 In
 
 Perez,
 
 the petitioners filed a voluntary bankruptcy petition two days before judgment was entered against them for personal injuries and property damages which arose from an automobile collision. The judgment was discharged in bankruptcy by order of the district court. Nevertheless, the State of Arizona suspended the Per-ezes’ driving privileges pursuant to a statute which provided for such suspension when an accident-related judgment went unsatisfied for 60 days. In order to regain their privileges, the Perezes were required to satisfy the judgment and give proof of future financial responsibility. Unlike the Ohio Act, the Arizona statute required satisfaction of the judgment even though it was discharged in bankruptcy or its collection stayed.
 
 Id.
 
 at 638-42, 91 S.Ct. at 1705-1707.
 

 In considering whether the Arizona law unconstitutionally conflicted with the Bankruptcy Act, the Court noted that “the validity of [the] limited requirement that some drivers post evidence of financial responsibility for the future in order to regain driving privileges is not questioned here.”
 
 Id.
 
 at 642, 91 S.Ct. at 1707. The only issue the Court examined was whether a State may enact a statute “providing that a discharge in bankruptcy of [an] automobile accident tort judgment shall have no effect on the judgment debtor’s obligation to repay the judgment creditor, at least insofar as such repayment may be enforced by the withholding of driving privileges by the State.”
 
 Id.
 
 at 643, 91 S.Ct. at 1708. The majority determined that the statute jeopardized the “fresh start” objectives of the Bankruptcy Act by providing creditors leverage for collection of judgments which had been discharged in bankruptcy.
 
 Id.
 
 at 646-48, 91 S.Ct. at 1710-10. In the majority’s view, one of the primary purposes of the Bankruptcy Act “is to give debtors ‘a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.’ ”
 
 Id.
 
 at 648, 91 S.Ct. at 1710 (quoting
 
 Local Loan Co. v. Hunt,
 
 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). Because the Arizona law obstructed these objectives, it was found to be invalid under the Supremacy Clause.
 
 Id.,
 
 402 U.S. at 656, 91 S.Ct. at 1714.
 

 Thus the
 
 Perez
 
 decision, which section 525 of the Bankruptcy Act codifies, specifically left open the issue we now consider:
 
 *271
 
 whether bankrupts who have discharged an accident-related judgment can be required, as a condition to the restoration of driving privileges suspended prior to the bankruptcy, to post evidence of financial responsibility. The legislative history indicates that section 525 was intended by Congress to incorporate further refinements of the
 
 Perez
 
 doctrine:
 

 [T]he enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the
 
 Perez
 
 rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a State bar association or a medical society, or by other organizations that can seriously affect the debtors’ livelihood or fresh start....
 

 S.Rep. No. 989,
 
 supra,
 
 at 81, 1978 U.S. Code & Ad.News at 5867. It appears that section 525 is intended to ensure that bankrupts are not deprived of a “fresh start” because of governmental discrimination against them, based “solely” on the bankruptcy. Senate Report 989 specifies that “the effect of ... section [525], and of further interpretations of the
 
 Perez
 
 rule, is to strengthen the anti-reaffirmation policy found in section 524(b). Discrimination based solely on nonpayment could encourage reaffirmations, contrary to the expressed policy.”
 
 Id.
 
 The House further noted regarding Section 525:
 

 [T]he purpose of the section is to prevent an automatic reaction against an individual for availing himself of the protection of the bankruptcy laws. Most bankruptcies are caused by circumstances beyond the debtor’s control. To penalize a debt- or by discriminatory treatment as a result is unfair and undoes the beneficial effects of the bankruptcy laws. However, in those cases where the causes of a bankruptcy are intimately connected with the license, grant, or employment in question, an examination into the circumstances surrounding the bankruptcy will permit governmental units to pursue appropriate regulatory policies and take appropriate action without running afoul of bankruptcy policy.
 

 H.R.Rep. No. 595, 95th Cong., 1st Sess. 165
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5963, 6126 (footnote omitted). Therefore, we agree with the district court’s conclusion that “the primary purpose of section 525 of the Bankruptcy Code is to prevent the government either from denying privileges to individuals solely as a reaction to their filing bankruptcy or from conditioning the grant of privileges on the bankrupt’s reaffirmation of certain debts.”
 
 Duffey v. Dollison,
 
 No. C-2-81-1154, slip op. at 8 (S.D.Ohio Aug. 13, 1982). It is thus necessary to determine whether the Ohio Financial Responsibility Act impedes the accomplishment of, or frustrates, these Congressional objectives.
 
 Perez v. Campbell,
 
 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971).
 

 III.
 

 In considering whether a state statute impermissibly conflicts with a federal law, a court “must be guided by respect for the separate spheres of governmental authority preserved in our federalist system.”
 
 Allessi v. Raybestos-Manhattan, Inc.,
 
 451 U.S. 504, 522, 101 S.Ct. 1895, 1905, 68 L.Ed.2d 402 (1981). “[P]re-emption of state law by federal statute or regulation is not favored ‘in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.’ ”
 
 Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.,
 
 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981) (quoting
 
 Florida Lime & Avocado Growers, Inc. v. Paul,
 
 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d (1963)).
 

 The Duffeys contend that Ohio law requires them to post proof of financial responsibility “solely” because they have not paid a debt that is dischargeable in bankruptcy. Therefore in the Duffeys’ view, the Ohio Act violates section 525 of the Bankruptcy Act because section 525 specifically prohibits states from using the fail
 
 *272
 
 ure to pay a debt as the basis for denying a driver’s license.
 

 We agree with the district court that the Duffeys misinterpret both section 525 and the Ohio Act. Of course, the former Ohio statute, by requiring payment of the judgment notwithstanding bankruptcy, would indeed violate section 525; as the legislative- history of section 525 indicates, this would be “the
 
 Perez
 
 situation.” S.Rep. No. 989, 95th Cong., 2d Sess. 81,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5867.
 
 [4]
 
 However, since the present Ohio Act provides that a judgment stayed or discharged in bankruptcy need not be satisfied by the judgment debtor as a condition to the restoration of driving privileges, it clearly is consistent with the immediate holding in
 
 Perez:
 
 the Act neither provides creditors “leverage for the collection of damages,” nor under the facts here does it coerce bankrupts into reaffirming discharged debts.
 
 Perez v. Campbell,
 
 402 U.S. 637, 646-47, 91 S.Ct. 1704, 1710-10, 29 L.Ed.2d 233 (1971).
 

 We recognize that the portion of the Ohio Act which suspends motorists’ driving privileges for failure to satisfy a judgment is not triggered unless a judgment creditor requests in writing that a certified copy of the unsatisfied judgment be forwarded to the Registrar. Ohio Rev.Code Ann. § 4509.35 (Baldwin 1975). It is conceivable that under certain circumstances not present here, a creditor might attempt to use this ability to initiate license suspension proceedings to coerce a debtor into reaffirming all or part of a judgment that is stayed by the Bankruptcy Act.
 

 However under the facts of this case, the Duffeys could not have been coerced into reaffirming the stayed judgments because the judgments had been certified to the Registrar and the requirement of' furnishing proof of financial responsibility had been fixed
 
 before
 
 the Duffeys filed in bankruptcy. Once the judgment were certified, the Duffeys could not have regained their driving privileges without furnishing proof of financial responsibility even by paying the judgments. Thus, at that juncture, the judgment creditors could do nothing further to benefit or inconvenience the Duf-feys; there was no leverage which could have induced the Duffeys to reaffirm their debts. As applied here the Ohio Act, which depends on judgment creditors to initiate license suspension proceedings, employs a reasonable method for relieving the state of the burden of policing every accident-related judgment. Ohio simply has chosen in civil cases to place the responsibility for reporting unsatisfied tort judgments on the party in the best position to know whether a judgment has been satisfied, and with the greatest incentive to notify the Registrar of nonpayment.
 
 [5]
 

 The Duffeys would have us hold that the Ohio Motor Vehicle Financial Responsibility Act violates section 525 because the Act fails to treat a bankrupt as though he or she had never incurred a dischargeable, accident-related tort judgment. Under such an interpretation, once a judgment is discharged or stayed, states would be absolutely prohibited from imposing or continuing any burden, whether a reaffirmation of liability or the imposition of financial responsibility requirements. We believe that this reads more into section 525 than Congress intended.
 

 As the district court correctly noted:
 

 [Njeither the language of the statute nor its legislative history indicates that section 525 was intended by Congress to erase all traces of a discharged debt and
 
 *273
 
 thereby foreclose the imposition of any future responsibility requirements. To the contrary, the legislative history of section 525 contemplates both the consideration of the circumstances surrounding bankruptcy and the valid imposition of future financial responsibility requirements.
 

 Duffey v. Dollison,
 
 No. C-2-81-1154, slip op. at 10 (S.D.Ohio Aug. 13, 1982). This conclusion is amply supported by the legislative history. Senate Report 989 specifically observes that section 525 “does not prohibit consideration of other factors,
 
 such as future financial responsibility or ability,
 
 and does not prohibit imposition of requirements such as net capital rules, if applied nondiscriminatorily.” S.Rep. No. 989,
 
 supra,
 
 at 81, 1978 U.S.Code Cong. & Ad.News at 5867 (emphasis added). House Report No. 595 makes this point even more emphatically:
 

 [T]he prohibition [of section 525]
 
 does not extend so far as to prohibit examination of the factors surrounding bankruptcy, the imposition of financial responsibility rules if they are not imposed only on former bankrupts,
 
 or the examination of prospective financial condition or managerial ability.... [I]n those cases where the causes of a bankruptcy are intimately connected with the license, grant, or employment in question, an examination into the circumstances surrounding the bankruptcy will permit governmental units to pursue appropriate regulatory policies and take appropriate action without running afoul of bankruptcy policy.
 

 H.R.Rep. No. 595, 95th Cong. 1st Sess. 165
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5963, 6126 (emphasis added). Thus, Congress has evinced a clear intent to permit the imposition of financial responsibility requirements, so long as they are not discriminatorily applied to bankrupts.
 

 The Ohio Financial Responsibility Act in no way discriminates against bankrupts, or penalizes them for filing in bankruptcy. The Act provides that “any person” who fails to satisfy an accident-related judgment within 30 days shall have his or her driving privileges suspended by the Registrar. Ohio Rev.Code Ann. §§ 4509.35, .37 (Baldwin 1975). The statute applies without exception to
 
 any
 
 person who fails to satisfy a judgment for whatever reason, whether because of unwillingness, inadvertence, or inability to pay. Once a judgment has been certified to the Registrar for nonpayment, the debtor’s obligation to furnish proof of financial responsibility becomes fixed. Thereafter, neither payment of the debt, reaffirmation, nor bankruptcy can relieve the debtor of this requirement. Judgment debtors such as the Duffeys who seek relief under the bankruptcy laws are therefore treated no differently from any other judgment debtor. Indeed it is this lack of discrimination to which the Duffeys take exception. By arguing that bankrupts who have proved to be irresponsible drivers should be excused from the requirement of posting proof of financial responsibility, the Duffeys in effect ask this court “to go beyond the fresh start policy of
 
 Perez
 
 and ... give a debtor a head start over persons who are able to satisfy their unpaid judgment debts without resort to a discharge in bankruptcy.”
 
 In re Cerny,
 
 17 B.R. 221, 224 (Bkrtcy.N.D.Ohio 1982). We do not believe that section 525 was intended by Congress to afford debtors in bankruptcy such preferential treatment.
 

 We therefore hold that Ohio’s “one-bite” approach to the imposition of financial responsibility requirements, as applied to the Duffeys, violates neither the
 
 Perez
 
 holding nor its statutory codification, section 525 of the Bankruptcy Act. As Judge Holschuh persuasively reasoned,
 

 [i]t is undisputed that Ohio may require all motorists to carry liability insurance or post security before they are issued operator’s licenses.
 
 Bell v. Burson,
 
 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). If the State may legitimately establish such a prerequisite to the grant of driving privileges, a less stringent requirement should
 
 a fortiori
 
 be valid. The challenged Ohio statutes afford individuals the opportunity of driving without any showing of financial responsibili
 
 *274
 
 ty until they incur a judgment which they are unable to pay. This “one-bite” approach undoubtedly makes it possible for many individuals who otherwise could not afford insurance to obtain driving privileges. [The Duffeys] argue that because Ohio has used this more lenient approach, it is forbidden to suspend their driving privileges, despite the fact that they have demonstrated irresponsibility as a driver coupled with an inability to satisfy a resulting judgment. [This] argument, however, ignores the potential consequences to the victims of an accident caused by an individual who is an irresponsible driver.
 

 Duffey v. Dollison,
 
 C-2-81-1154, slip op. at 12 (S.D.Ohio Aug. 13, 1982).
 

 Our ruling here is a relatively narrow one. We uphold the Ohio Act where the requirement to furnish proof of financial responsibility has become fixed, through certification to the Registrar, prior to bankruptcy. Where the obligation has thus become fixed, neither payment of the judgment, nor arrangement with the creditor, nor bankruptcy can relieve the debtor of the requirement of furnishing proof of financial responsibility. In this respect the Ohio Act does not have the effect of discriminating between those who are bankrupt and those who are not. It cannot induce the bankrupt to reaffirm a discharged debt, or to pay thereafter, for neither action can affect the legal requirement to post proof of financial responsibility.
 

 The judgment of the district court is AFFIRMED.
 

 [1]
 

 .
 
 See generally
 
 7 Am.Jur.
 
 Automobile Insurance
 
 § 20 (1980).
 
 See also Kesler v. Department of Public Safety,
 
 369 U.S. 153, 158-68, 82 S.Ct. 807, 811-16, 7 L.Ed.2d 641 (1962), for a discussion of the development of motor vehicle financial responsibility laws in the United States.
 

 [2]
 

 . As of September, 1982, eleven states had such "future proof” laws: Florida, Mississippi, Nebraska, Nevada, New Hampshire, Ohio, Oregon, South Dakota, Tennessee, Texas, and Washington. Traffic Safety Department, American Automobile Ass’n,
 
 Digest of Motor Laws
 
 (49th ed. 1983).
 

 [3]
 

 . Sections 4509.35 through 4509.40 and section 4509.45 of the Ohio Revised Code are set forth in full below.
 

 4509.35 Registrar to receive copies of judgments
 

 Whenever any person fails within thirty days to satisfy a judgment rendered within this state, upon the written request of the judgment creditor or his attorney, the clerk of the court which rendered the judgment, or the judge if the court has no clerk, shall immediately forward a certified copy of the judgment to the registrar of motor vehicles.
 

 Whenever any nonresident has been convicted of the offenses enumerated in section 4507.-16 of the Revised Code or has forfeited bail given to secure his appearance for trial upon a charge of any such offense, the clerk of every court of record shall forward immediately to the registrar a certified copy or transcript of the conviction or order of forfeiture of bail.
 

 4509.36 Copies of judgments sent to other states
 

 If the defendant named in any certified copy of a judgment, conviction, or order of bail forfeiture reported to the registrar of motor vehicles is a nonresident, the registrar shall transmit a certified copy of the judgment, conviction, or order of bail forfeiture to the official in charge of the issuance of licenses and registration of the state of which the defendant is a resident.
 

 4509.37 Suspension of license, registration, and privilege; reinstatement
 

 The registrar of motor vehicles upon receipt of a certified copy of a judgment, shall forthwith suspend the license and registration and any nonresident's operating privilege of any person against whom such judgment was rendered, except as provided in sections 4509.01 to 4509.-78 of the Revised Code.
 

 Such certified copy of a judgment shall include the last known address, the social security number, if known, and the operator's license number, of the judgment debtor.
 

 4509.38 Waiver by judgment creditor of suspension provision
 

 If the judgment creditor consents in writing, in such form as the registrar of motor vehicles prescribes, that the judgment debtor be allowed license and registration or nonresident’s operating privilege, the same may be allowed by the registrar for six months from the date of the consent and thereafter until the consent is revoked in writing, notwithstanding default in the payment of such judgment, or of any installments thereof prescribed in section 4509.42 of the Revised Code, provided the judgment debtor furnishes proof of financial responsibility and thereafter maintains it in accordance with section 4509.45 of the Revised Code.
 

 4509.39 No suspension when insurer obligated
 

 No license, registration, or nonresident’s operating privilege shall be suspended for nonpayment of a judgment under sections 4509.01 to 4509.78, inclusive, of the Revised Code, if the registrar of motor vehicles finds that an insurer is obligated to pay such judgment, at least to the extent and for the amounts required in such sections, but has not paid such judgment. A finding by the registrar that an insurer is obligated to pay a judgment is not binding upon the insurer and has no legal effect except for the purpose of administering this section. Whenever in any judicial proceeding it is determined by final judgment, decree, or order that an insurer is not obligated to pay such judgment, the registrar, notwithstanding any previous contrary finding, shall forthwith suspend the license and registration and nonresident’s operating privilege of any person against whom such judgment was rendered, as provided in section 4509.37 of the Revised Code.
 

 4509.40 Suspension continues until settlement of judgment
 

 Any license, registration, and nonresident’s operating privilege suspended for nonpayment of a judgment shall remain so suspended for a period of seven years from the effective date of suspension, and while such order is in force no license, registration, or permit to operate a motor vehicle shall be issued in the name of such person, including any such person not previously licensed. The registrar shall vacate the order of suspension upon proof that such judgment is stayed, or satisfied in full or to the extent provided in section 4509.41 of the Revised Code,
 

 
 *269
 
 subject to the exemptions stated in sections 4509.37, 4509.38, 4509.39, and 4509.42 of the Revised Code, and upon such person's filing with the registrar of motor vehicles evidence of financial responsibility in accordance with section 4509.45 of the Revised Code.
 

 4509.45 Proof of financial responsibility
 

 Proof of financial responsibility when required under section 4507.41, 4509.32, 4509.33, 4509.34, 4509.38, 4509.40, 4509.42, or 4509.44 of the Revised Code may be given by filing any of the following:
 

 (A) A certificate of insurance as provided in section 4509.46 or 4509.47 of the Revised Code;
 

 (B) A bond as provided in section 4509.59 of the Revised Code;
 

 (C) A certificate of deposit of money or securities as provided in section 4509.62 of the Revised Code;
 

 (D) A certificate of self-insurance, as provided in section 4509.72 of the Revised Code, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while* the certificate is in force, he will pay the same amounts that an insurer would have been obligated to pay under an owner’s motor vehicle liability policy if it had issued such a policy to the self-insurer.
 

 Such proof shall be filed and maintained for three years from the date of suspension of operating privileges by the registrar of motor vehicles.
 

 [4]
 

 . Senate Report No. 989 states: "The prohibition [of section 525] extends only to discrimination or other action based solely on the basis of the bankruptcy, on the basis of insolvency before or during bankruptcy prior to a determination of discharge, or on the basis of
 
 nonpayment of a debt discharged in the bankruptcy case (the
 
 Perez situation).” (emphasis added).
 

 [5]
 

 . This statutory scheme thus complements the provisions of the Motor Vehicle Responsibility Act pertaining to criminal traffic cases. Ohio courts are required to initiate license suspension by notifying the Registrar whenever a person has been convicted of, pleads guilty to, or forfeits bail for certain serious traffic offenses. Ohio Rev.Code Ann. §§ 4507.16, 4509.31 (Baldwin 1975).